Thank you, Your Honor. Good morning. My name is Richard Levy for the appellant Maher Diab. The key factual point in this case is that no reason was given for the sudden, last-minute decision to move to withdraw the exhibits. The government knew on the first day of trial, when it played only the excerpts, that it was only going to play the excerpts. It even asked the court for guidance, but it never withdrew the full exhibits after the first day, after the second day, before oral argument, before summations began. Only when the defense summation relied on the full exhibits three and four, did the government apparently realize we'd better move to withdraw these. Let's assume, for purposes of discussion, that that was error, that the district court erred in withdrawing those two exhibits. And let's also assume, for purposes of discussion, I know you contend otherwise, that it's not structural error. There has to be some prejudice. What was the prejudice? Under the Gaskins case, which is the Rule 30 case, where instructions were given or not given by surprise, and which seems the most closely analogous situation to this case, there are two ways to show prejudice, both focusing on the defense summation, not on the strength of the overall case, but on summation. Either the party was unfairly prevented from arguing his or her defense to the jury, or was substantially misled in formulating and presenting arguments. And I focused on that, and that's why I wanted to ask you about it. Essentially, the summation was they taped a whole bunch of stuff, and they never saw Mr. Diab delivering the drugs to the buyer. And so I want to point out to you the absence of that on the tapes. That was true of the tapes that were left in evidence, correct? Yes. And when that argument was made, the government's response essentially was, well, they're right, but we can't get everything, and we sure have a lot. I have the little excerpt. I can read it to you from the summation. So given that, if the government had got up and said, well, you know, we have something somewhere that shows it, or, you know, but they didn't. They admitted that they didn't have anything that showed the deal. And so given that, how did it really hurt the argument? The argument was true, and the government admitted it was true. The first point, Judge Hurwitz, is how central the full exhibits was to the summation. At the very beginning of the summation, the defense said, we have two types of evidence. We have the tapes, and we have this confidential informant. But the main point about the tapes was what Judge Hurwitz just asked. They didn't show the actual transfer. So I don't understand how, even if they mention the tapes, how it's a big deal that they didn't have the full tapes. A couple of points, Judge Friedland. This was the dog that didn't bark. If you watch the entirety of the tapes, you see, wow, what was the point? But that's one of the excerpts that they saw, too, so it's not that different. It's not that different, but it's so much fuller, and it's so much more vivid. I mean, the tape amounts to a showing of nothing, and you could make that argument just based upon what was introduced. The excerpt, they could say, well, look, you've seen everything the government wants you to see, and there's nothing there. What's the difference between that argument and the other argument you would have made if the other portions of the tapes were in the jury room? Sure, Judge Toshiba. The facts are in the record, but it's the same thing as... Oh, facts? There are no facts in the rest of the tape, are there? No. Well, the facts show just how bad this surveillance was that jurors could fairly infer was not attributable to incompetence. And you can make that argument based upon the excerpt. Look, you see all the excerpts, there's nothing there. That's a bad surveillance. You could have made the same argument. It's like in a PI case where you have a day-in-the-life video of the paraplegic having to do everyday things. Sure, you could have testimony about that, but the vividness of a video showing it is worth far more. But it's the vividness of a video, it seems like Seinfeld, to show about nothing, because what you're arguing is there's nothing on any of these videos that show my client doing the ultimate transaction. And that's true. But it's true whether they see two videos or four or six or eight, and I'm not sure why it becomes more vivid with the absence of more evidence. It's different with excerpts because a juror could always think, well, okay, things happen, they forget to aim the camera here, a little mistake there. But see, that's why I got back to the government's argument. The government didn't get up and say, oh, that's on another video somewhere. The government said, we don't capture everything, and we didn't capture that. But what we captured is good enough for you to convict. And a video would have made that, the full video would have made that much more powerful. But part of the problem here for me is that the jury didn't ask for the videos. So we don't even, I mean, I think your argument depends on the idea that the jury would have wanted in the jury room to watch these full videos. And don't we have a lack of any indication that that's true? Well, we don't know what went on in the jury room. That's true, Judge Friedland. But would you expect a note or some question, like where are the videos? I mean, if they actually cared to watch the videos, I don't understand how there would just be silence from the jury room. It seems very easy to say where's the video recorder or something. They assumed that they had everything they were entitled to and that the defense was wrong. How do we know that? Why do we assume that? Well, we can't, of course we can't get into the jurors' thought processes at all. So any evaluation of prejudice is going to have to be a little bit of just doing the best we can on the record and on common sense. And this goes back, Judge Friedland and Judge Hurwitz, to the question of the prejudice. The defense put his credibility on the line. Even if the full video showed nothing, he said these are going to be in evidence. You're going to get to watch these. Watch these because these are the best evidence. That only affects his credibility if the jury actually then planned to do that. And we have no indication that they did because it seems like if they had wanted to watch full videos because they thought it affected their assessment of credibility, they would have said, hey, where are the videos? I think the more likely inference, Judge Friedland, is the defense says watch these, watch these, these are important. Jury sees not admitted. They figure the defense is just going to smoke. Did the jury know they were not admitted? Yes, because the court had the clerk bring all the exhibits into the jury room. The jurors knew that what was brought into the jury room were the admitted exhibits. But that wasn't the question I asked. Were the jurors told that the judge has excluded some of the exhibits? No, no. So far as they knew, they got the complete set of tapes. In total, they may have started looking. But how would they have known something was missing? In other words, nobody during the trial played tapes three and four. Right. We know that because there was no recorder. Right. They would have had to ask. So they didn't, did the jury really know anything was missing? All we need is one juror paying attention to the defense argument, leafing through the exhibits, seeing that we only have excerpts, and then saying, okay, obviously the defense was putting one over on us. We can't rule that out, and it seems to me pretty plausible, given the importance of this argument to the defense. The primacy effect. This was the very first thing the defense hammered home in summation. Look at the full exhibits. Did you want to save some time for remarks? I will. Thank you. Judge Tashima has a question. We'll give you some time. I have a question. And this has to do with this Noshvar case, which I think the government cited and the district judge relied on in permitting the government to withdraw these exhibits. But Noshvar says, holds, sending into the jury room a tape that hasn't been played in court is structural error. Right? I mean, that's the whole thing. Let me finish. I'm sorry. That's the whole thing of Noshvar. So if we go with your position here, I mean, you can win either way. If it goes in, you win. If it stays out, you win. Isn't that a dilemma for the government? No, because Noshvar, as I explained in the reply brief, Noshvar was limited to the defendant's rights, the defendant's right of confrontation, defendant's right to a public trial. The government doesn't have these rights. And in any event, the whole thing. The whole thing doesn't depend on that. The whole thing says, right, sending in a tape to the jury room that hasn't been played in court is structural error. Period. That's the whole thing. I think that has to be in the context of the defendant's rights. Well, but is it in the context of a case in which the defendant objected to the introduction of the tapes? I think that's what happened. Yes, yes. Here you did not object to the introduction of the tapes. In fact, we. And it seems to me the absence of the objection waives any confrontation right. Yes, that's exactly right, Judge Hurwitz. And the defense affirmatively wanted the exhibits to remain. Had you objected, it seems to me the government would have been acting appropriately then and saying, let's avoid this error in Joshua. Yes. By keeping these tapes from the jury, because otherwise there would be a confrontation. Yes. Yes. Because because the purpose of now sure is to protect the defendant's rights without an objection and with affirmative desire to have the exhibits introduced. There's no there's no error. You've exceeded your time. We'll give you some time for rebuttal because we took you over. Morning, Your Honors. May it please the court. Bram Alden for the United States. This court should affirm for lack of prejudice. As the court has already alluded to, there was no dispute about what the videos did not show. And the videos that were played and remained in evidence, those clips, were what supported the defendant's argument that there was no video recording of the actual placement of the Lemonhead box on the tire. That wasn't in the video. That wasn't disputed. That you never heard the defendant quote the price for the sample that he was selling. That wasn't in the video and that wasn't disputed. And finally, the third argument he made that you didn't hear the $100 amount ever quoted in the actual video at the end. Withdrawing an exhibit, one, after it's been admitted, and two, after, isn't this after the closing argument has commenced? Yes. It's a highly unusual move. There's no case that directly supports your position in the criminal context, is there? Who are the defendant objects? The only case that the government could find on that was the Eighth Circuit's case in Wilkins. But I do agree with Your Honor that it was an unusual move. I think it was motivated. It was error, was it not? There's no basis for removal of these exhibits over the objection of the I would agree with that. I would say that the initial motion to withdraw was not error because it was premised on the idea that this could be a problem. Well, it wasn't bad faith. I mean, I'm not saying you did it, and they're not arguing you did it, in order to screw them over. You thought there might be a confrontation clause problem, but there really wasn't. So the judge shouldn't have withdrawn these exhibits, correct? I think that's right. I would say that the motion itself was appropriate to notice that there might be a problem. The appropriate thing to do was not to ever offer those exhibits. That was a mistake, right? I think a better procedure would have been not to offer the entire video exhibits, yes, Your Honor. And I think ultimately what was motivating the government was nothing nefarious. It was the idea that this could be a Rule 43 problem, it could be a confrontation clause problem. Ultimately, however, as the Court has already alluded to, there was no prejudice from this. And the theory that the defense's closing argument was somehow undermined is simply not enough to establish prejudice in this context. I'd point the Court to the FOP case, that's F-O-P-P-E, that the defendant cites in his brief. In that case, there was an instruction that the defendant requested that would have told the jury that a photo lineup with multiple potential suspects is more reliable than a single witness identification. And the defendant requested that instruction, and the Court said that it would give the defense's requested instructions. So the defendant, in closing, then proceeded to make that argument and read the instruction. The Court failed to deliver on that promise and then refused to give the instruction that the defense counsel had already read. Even in that context, this Court held that that was insufficient to show prejudice. And specifically, the Court said whatever loss of credibility. Wait a minute. In that case, was it held to be error or just, you know, implicitly? It was held to be error under Federal Rule of Criminal Procedure 30, which requires the Court to make clear to the defense counsel in both parties what instructions it's going to give before closing argument. But what the Court said, what this Court said, was that whatever loss of credibility the defense counsel may have suffered is not sufficient prejudice to merit reversal. I think if even in that context that wasn't sufficient prejudice, here there simply cannot be. As Judge Friedland has pointed out, the jury never asked to see anything more in the Fourth Circuit cases, in the Second Circuit cases that the defense has cited in its brief. The jury did ask to see more evidence, and that was a problem when after closing new evidence was introduced. A lot of the prejudice analysis in criminal cases depends on the strength of the government's case otherwise, right? Yes. You think the government had a strong case here in this case? I do, Your Honor. Even though there wasn't much in the videos? And that's why the jury only deliberated for less than an hour here. The agent testified at trial? Yes. But not the informant, obviously. The informant, I believe, also did testify. Did the informant testify? That's what I was trying to figure out. I believe so. He keeps – everybody refers to him as a confidential informant. It seems to me if he testified, he's no longer confidential. I think he was known to be Stevie and – Well, there's a name there. I'll go look at the record. Yeah, I guess I would have to look at the record, too. I don't remember, Your Honor. And I should remember that, and I apologize that I don't. Let me ask you a question about these tapes. You played excerpts of the tapes to the jury. What went back to the jury room? Was it a transcript, or was it the actual tapes? It appears from the record that the tapes went back. Does the record indicate whether the jury had a recorder or device to play them? No, it does not. Because some of the exhibits we have are transcripts. Yes, Your Honor. Of the tapes. And the transcripts, I believe, were not the evidence because these were English language recordings. But I don't know that the transcripts went back. Usually our practice is just to have them shown to the jury during trial but not to send the transcripts back. And so what I believe went back was the tapes, but there is nothing in the record to say. Am I right in thinking that some of the tapes are exchanges in Spanish? No, this conversation was in English. Oh, it was in English. Yes. I'm sorry. But we don't know whether the jury actually played the tapes they got. There's nothing in this record that can tell us that. No. I see that I still have three minutes, but if the court doesn't have further questions, I can submit. Thank you. Thank you. We'll give you a minute for rebuttal. Thank you. Just to respond to the court's question, the confidential informant did testify. Okay. That was Stevie. I'd just like to emphasize one point on the Leed-Gaskins case, the Rule 30 case. Prejudice is determined, not error, but prejudice is determined by whether the defense was substantially misled in formulating and presenting arguments without reference to how it may have affected the jury. You look only at the summation. You don't look at what the jury did or other typical indicia of prejudice. So following Gaskins. I don't really know that. I mean, this actually is the question you're trying to raise is about what the jury would have done in the jury room. That's not necessarily true when you're talking about, like, the legal framework when you're talking about the jury instructions. I mean, that doesn't have a piece of would they have looked at something the same way this does. So I don't know if it translates. It's true, Judge Freeland, but under Gaskins, the analysis of prejudice stops with the summation under the passage I quoted. But what I'm saying is that's maybe because of the nature of the error there. I understand. Whether it's an instructional or evidentiary, it still handicaps the defense in the same way. But the case says substantially. Yes. And that's really the issue we've been sort of focusing on, whether the absence of the tapes going back to the jury really substantially undermined the argument because the argument was every bit as good with respect to the tapes that went back as with respect to the tapes that didn't. Well, yes, but from the counsel's perspective, he thought it depended on the whole tapes plainly. If he had known that the tapes would be withdrawn, he would not have made it the first point of his summation. Look at those full tapes. He would have come up perhaps with a different theory, a different emphasis, all sorts of other things he could have done. So we know that he, I know I'm over my time, we know that he was substantially impaired because he made it such a central part of his summation. Unless my colleagues have other questions, we thank both counsel for their excellent arguments. Okay, thank you. This case will be submitted. The next case on our calendar this morning is Milam v. Harrington.
judges: Tashima, Hurwitz, Friedland